IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-cr-20267-KMW

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

AERIEL NUÑEZ FINALET

    Defendant.
_____/

## MEMORANDUM IN AID OF SENTENCING

The defendant, AERIAL NUNEZ FINALET, by and through her undersigned counsel, respectfully submits this memorandum in aid of sentencing to assist the Court in fashioning a sentence that is "sufficient, but not greater than necessary," to fulfill the federal sentencing requirements of 18 U.S.C. §3553(a). Sentencing is scheduled for March 29, 2024.

### INTRODUCTION

At the start is should be clear that Mr. Finalet is sincerely remorseful for his criminal conduct and acknowledges that the offense to which he has entered his plea of guilty is of a serious nature. Further, Mr. Finalet wholly realizes the impact his poor decision to become involved in this criminal conduct will have upon his family and his future, and knows he has nobody to blame but himself.

1

The United States Supreme Court has stated that federal sentencing demands that every convicted person be treated as an individual and "every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Gall v. United States*, 128 S.Ct. 586, 589 (2007). It is the sincere hope that this Honorable Court will examine Mr. Finalet's "human failings" along with the other aspects of his life, and find that a sentence well- below the low-end of the advisory guideline range is appropriate in this instance. Stated another way, a man should not be judged by his worst day or month or couple of months, but it is the whole measure of the man that should be considered.

In this regard, the undersigned counsel respectfully submits that twelve (12) months and one day sentence would be appropriate.

## PROCEDURAL BACKGROUND

1. On January 10, 2024, Mr. Finalet plead guilty to Count One of a 10-Count Indictment charging conspiracy to commit health care and wire fraud, in violation of 18 U.S.C. § 1349, for his conduct beginning in January 2014 through September 2014 (Presentence Investigation Report ("PSI") ¶ 1 and 54.  Mr. Finalet was not named in Counts Two through 10. *Id*.

2. On July 4, 2017, Mr. Finalet was detained in Cuba pursuant to an Interpol Red Notice seeking the detention of Mr. Finalet for the Medicare fraud scheme referenced in this Indictment.  On May 31, 2018, Mr. Finalet was sentenced by Cuban authorities to eight (8) years incarceration for the crime of money laundering related, indirectly or directly, to the Medicare fraud crime referenced in the Interpol Red Notice.  On February

21, 2021, Mr. Finalet was released from Cuban custody. Mr. Finalet was detained for a total of forty-four (44) months in Cuba.

3. On March 21, 2023, Mr. Finalet was arrested in Spain and held for extradition to the United States. On November 21, 2023, Mr. Finalet was extradited to the United States. PSI ¶ 109.

4. The Presentence Investigation Report provides at Paragraph 183: "Guideline Provisions: Based upon a total offense level of 20 and a criminal history category of I, the guideline imprisonment range is 33 months to 41 months." PSI ¶ 183.

5. The sentencing hearing is presently scheduled for March 29, 2024.

6. The within Motion for Downward Variance pursuant to 18 U.S.C. §3553(a) Factors is filed in the utmost of good faith and in the interest of justice.

### *History and Characteristics of Mr. Finalet that Warrant Consideration*

Title 18 U.S.C. §3553(a)(1) provides that the court in fashioning the appropriate sentence to be imposed, shall consider "the nature and circumstances of the offense and the history and characteristics of the defendant."

With regard to the history and characteristics of Mr. Finalet, the Presentence Investigation Report prepared by the Probation Officer more than adequately sets out the family history and personal information of the Defendant. However, there are some significant points that should be highlighted and which warrant consideration as set forth below.

Mr. Finalet is a 58-year-old Cuban national with no criminal history who signed a plea of guilty to an offense involving conspiracy to commit health care fraud. The fraud

occurred a little over ten (10) years ago. (PSI ¶ 27). In the intervening ten (10) years, however, Mr. Finalet has been detained twice by foreign authorities based on this conduct. First, by law enforcement in Cuba where he was incarcerated for approximately forty-four (44) months on Cuban money laundering charges stemming from his conduct in Florida; and second, by law enforcement in Spain where he was detained for eight (8) months pending extradition to the United States. All told, Mr. Finalet has been detained for fifty-four (54) months for conduct for which his Guideline Sentence range is thirty-three (33) to forty-one (41) months.

To impose a Guideline sentence under these circumstances would result in sentence that is greater than necessary to promote the statutory goals of punishment and deterrence. *See*, 18 U.S.C. §3553(a). Instead, the facts and circumstances of Mr. Finalet's conduct and subsequent detentions militates in favor of a sentence of one year and one day as one that is "sufficient, but not greater than necessary," to meet the aims of sentencing. *See, United States v. Gall*, 522 U.S. 38 (2007).

### *Mr. Finalet's Genuine Remorse*

Mr. Finalet is sincerely remorseful for his criminal conduct and wholly realizes the impact his poor decision to become involved in this criminal conduct and the effect it will have upon his family and future. A court may vary downward based on "personal factors" including "genuine remorse." *United States v. Gomez-Martinez,* 569 Fed. Appx. 777 (11th Cir. 2014). The 11th Circuit has long recognized that an offenders' "statement of remorse" is directly related to both 'the nature and circumstances of the offense and the history and

4

characteristics of the defendant,' within the meaning of §3553(a)(1)." *United States v. Thomas*, 446 F.3d 1348, 1357 (11th Cir. 2006). As will be established at the sentencing hearing, Mr. Finalet is exceptionally remorseful for his unlawful conduct.

Sentencing courts have observed that "exhibition of genuine remorse for his criminal behavior during his allocution" supported a downward variance. *See e.g., United States v. Burrus*, No. CR 19-284, 2020 WL 3799753, at *2 (W.D. Pa. July 7, 2020); *United States v. Baker*, 502 F.3d 465 (6th Cir. 2007) (affirming a variance in a firearms case from a Guideline range of 27-33 months to probation for his family caregiver role and remorse). Other courts have noted that in supporting the granting of a motion for reduction of sentence under the First Step Act that: "Perhaps most significant, the defendant has expressed remorse for his conduct." *United States v. Cheese*, No. CR ELH-98-259, 2020 WL 3618987, at (D. Md. July 2, 2020). As the Court knows, rehabilitation and refraining from further criminal conduct is unlikely without true remorse.

### *Nature and Circumstances of the Offense*

Mr. Finalet was recruited by the real players of the conspiracy to be a nominee owner of a pharmacy through which fraudulent prescriptions were made and paid (PSI ¶ 32 and 33). Mr. Finalet was also directed by the real players to cash checks and make withdrawals from the pharmacy in which he was the nominee owner and further directed to pay patient recruiters on occasion. PSI ¶ 41. Such payments, however, were generally made by leaders and organizers Pedro Torres and Tony Hevia. In addition, Mr. Finalet had no part in planning or organizing the criminal activity.

Notwithstanding, Mr. Finalet acknowledges that his decision to participate in this offense represents a grave ethical and moral failing on his part. Although Mr. Finalet's role was limited vis-à-vis others, his participation furthered the greater conspiracy, nonetheless. Mr. Finalet wants to make it abundantly clear that he takes full responsibility for his actions. He does not seek to minimize the significance of the crime or his role within it. He seeks only to place himself in a position where he can best learn from his error and rejoin his young family as a productive member of society.

### ***Recidivism, Retribution, Deterrence, and the Need to Protect the Public***

Both the Sentencing Guidelines and 18 U.S.C. §3553(a) require the sentencing Court to consider the characteristics of the defendant that make it more or less likely that the defendant will re-offend. It is submitted that Mr. Finalet does not need to be imprisoned for a lengthy period to see the errors of his ways. He has disgraced himself and his family and has already suffered forty-four (44) months of incarceration for his conduct. Until this case, he had lived a crime-free life, that along with his age (58), and lack of prior criminal record suggests that there is an extremely low probability of recidivism. Additionally, he does not pose a future risk of danger to his community or society.

One of the purposes of sentencing is to exact a measure of retribution from Mr. Finalet and to send a message of general deterrence. In this case a sentence of below the applicable Guideline range would be sufficient to provide the required measure of general deterrence and retribution. Here, the need to protect the public is served where the likelihood of Mr. Finalet engaging in any future criminal acts is very low. Again, his lack of criminal history and his age all suggest a low probability of future criminal behavior.

The United States Sentencing Commission issued a report entitled *Recidivism Among Federal Offenders: A Comprehensive Overview* (March 2016). Relevant to the Defendant, that report found the following percentages of those inmates that were reincarcerated after release were as follows: those with 0 criminal history points 12.27%; those who were between the ages of 51 to 60 at the time of sentencing 14.00%. In that report the Commission found that, consistent with existing research [the report of 2004], two factors – offenders' criminal histories and their ages at the time of release into the community – were most closely associated with differences in recidivism rates. Specifically, younger offenders recidivated at significantly higher rates than older offenders, and offenders with more extensive criminal histories recidivated at significantly higher rates than offenders with lesser criminal histories.

Regarding criminal history in particular, the Commission found that an offenders' total criminal history points, as determined under Chapter Four of the Commission's *Guidelines Manual*, were closely correlated with recidivism rates. Other factors, including educational achievement and offense type, also were associated with differences in recidivism rates, but less so than age and criminal history.

Mr. Finalet submits that he does not pose a danger to society and that a lengthy term of imprisonment will not serve the interest of protection of the public, specific deterrence, or rehabilitation. *See, United States v. Clay*, 483 F.3d 739, 745 (11th Cir. 2007)(recognizing the focus on risk of recidivism and the "characteristics of the defendant" in the judicial gaging of "objective risk management" concerns).

***To Protect The Public From Further Crimes***

*Specific deterrence* is achieved through, (1) incapacitation, (2) prosecution, (3) cooperation. Mr. Finalet did not have an opportunity to cooperate. All except for three of his codefendants were sentenced between 2016 and 2017. PSI at pgs. 2 - 4, and 8-9.

However, Mr. Finalet has been incapacitated, detained and/or prosecuted in three countries for conduct related, either directly or indirectly, to his conduct in the United States since July 4, 2017 through the time of his extradition to the United States on November 20, 2023 (with a brief period of time living in Mexico with his wife and infant son for five months (PSI ¶ 159).

As noted in Mr. Finalet's objections to the PSI (D.E. 604), Mr. Finalet was detained in Cuba from July 4, 2017 through February 21, 2021. Cuban authorities arrested Mr. Finalet on July 4, 2017 pursuant to the Interpol Red Notice referencing the Medicare fraud alleged in the Indictment. From July 4, 2017 to August 31, 2018, Mr. Finalet was held in pretrial detention in Cuba. During that time, Cuban authorities conducted their own investigation related to money laundering activities in violation of Cuban law. Specifically, Cuban authorities corroborated the information contained in the Red Notice regarding the alleged Medicare fraud with "other documentary evidence consisting of the publications made on the website of the newspaper of the American nation MIAMI HERALD." They concluded that the monies used by Mr. Finalet to purchase a home and a car in the Cuban territory were proceeds of the underlying offense in so far as Mr. Finalet had no other means of justifying the source of funds used in the purchases. As a result, Mr. Finalet was sentenced to 8 years in prison, of which he served fourteen (14) months in pretrial detention and thirty (30) months hard labor.

After petitioning the Cuban authorities for early release, Mr. Finalet was allowed to leave the country and travel to Mexico with his wife prior to the birth of their son. PSI ¶158. On March 20, 2023, Mr. Finalet, his wife along with their newborn travelled to Spain in search of medical treatment for their son who was born premature. *Id*. Upon arrival in Spain on March 21, 2023, Mr. Finalet was detained by Spanish authorities and held for extradition until November 21, 2023. *Id*.

Mr. Finalet's incarceration, incapacitation and prosecution to date suggest that it is most improbable that he will commit similar or any offenses in the future. There is no need for specific deterrence.

Finally, since July 4, 2021, Mr. Finalet is living with the seriousness of his actions. The arrest, the public shame, the effect on his family, lawyers, court appearances, guilty plea and conviction have all had the anticipated effect to deter Mr. Finalet from any future criminal activity. Mr. Finalet stumbled in ignorance. The certainty of the punishment has achieved that goal. Incarceration beyond a year and a day is not necessary to deter him from committing any future crime.

### *The Need for Individualized Sentencing*

The United States Supreme Court in *Pepper v. United States,* 131 S.Ct. 1229 (2011), emphasized the need for individualized sentencing based not only on the crime, but on the particular defendant as well. They said that Federal sentencing demands that every convicted person be treated as an individual and "every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." Citing: *Gall v. United States*, 128 S.Ct. 586, 589 (2007).

As this Honorable Court is well-aware, the Court has full authority to consider any evidence in deciding whether the Guidelines "properly reflect §3553(a) considerations." *Rita v. United States,* 551 U.S. 338, 351 (2007).

The Supreme Court has expressly directed sentencing courts that they may not presume that the guidelines range is reasonable. *Gall v. United States,* 128 S. Ct. 586 (2007). Rather, sentencing courts are directed to make an "individualized assessment" of the sentence warranted by §3553(a) "based on the facts presented." *Gall v. United States,* 128 S. Ct. at 597 (2007). The result is that "[a] sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008). Ultimately, courts are required to impose a sentence that is "sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote general and specific deterrence, rehabilitate the defendant, and protect the public. 18 U.S.C. §3553(a).

## CONCLUSION

It is respectfully submitted that there is a well-founded basis upon which this Court may grant this request for a downward variance, which will reflect the seriousness of the offense; promote respect for the law, and provide just punishment for the offense.

Additionally, such a variance would afford a more than adequate deterrence to any future criminal conduct of the Defendant and protect the public as well. In sum and substance, such a sentence would be in accord with the principles set forth in Title 18 U.S.C. §3553.

It is respectfully submitted that Mr. Finalet, who is presently fifty eight (58) years of age, with no criminal history points, deserves another chance to be a productive law-abiding member of society at the earliest time possible. A sentence below the advisory guideline range in this instance would be sufficient, but not greater than necessary, to comply with the sentencing goals set forth in Title 18 U.S.C.A. §3553(2)(A-D).

Lastly and as noted above, Mr. Finalet is sincerely remorseful for his totally unacceptable criminal behavior and will sincerely regret that conduct every day for the rest of his life.

WHEREFORE, Defendant, AERIAL NUNEZ FINALET, respectfully prays that this Honorable Court enter an order granting the within request for downward variance, and thereby impose a sentence well-below the low-end of the advisory sentencing guideline range.

Respectfully submitted,

BY: /s/ Jose-Carlos Villanueva         /
JOSE-CARLOS VILLANUEVA, ESQ.
Florida Bar No. 0034658
*CJA Counsel for Aerial Nunez Finalet*
2332 Galiano St., 2nd Floor
Coral Gables, Florida  33134
(o) (305) 496-5400
(f) (305) 357-3887
jcv@jcvpa.com

## **CERTIFICATE OF SERVICE**

I certify that the above and foregoing document was served on all counsel of record using the Court's CM/ECF court filing system on March 21, 2024.

Jose-Carlos Villanueva         /
JOSE-CARLOS VILLANUEVA
